GRAND LODGE ANCIENT ORDER UNITED WORKMEN, Appellant, v. FISCHER, Respondent.

(21 N. W.2d 213.)

(File No. 8773. Opinion filed September 12, 1945.)

Rehearing Denied Nov. 1, 1945.

Denial of Petition for Rehearing Reinstated Jan. 18, 1946.

**Van Slyke & Agor,** of Aberdeen, for Appellant.
**J. M. Berry,** of Ipswich, for Respondent.

RUDOLPH, J. Plaintiff brought this action for the purpose of having title to certain real estate as disclosed by an abstract declared a merchantable title. Plaintiff sold the real estate to the defendant and agreed to furnish a merchantable title. Plaintiff furnished defendant an abstract of title which defendant had examined by a reputable and competent attorney who made certain objections to the title and based upon these objections held the title was not such a title as the plaintiff agreed to furnish. The first objection relates to

the validity of certain probate proceedings in the estate of Jens Chris Jensen which culminated in a decree of distribution entered on February 8, 1908. We set forth the objections of the attorney to this probate proceeding:

"The petition for letters of administration found at Exhibit A was dated July 5, 1907, and filed July 12, 1907; an order for hearing petition for letters of administration was dated July 6, 1907, and filed July 12, 1907, and the notice for hearing petition for letters of administration was dated July 5, 1907, and filed July 12, 1907.

"The affidavit of publication shows that this notice was published in three issues of the South Dakota Tribune, the first publication being made on July 11, 1907, and the last on July 25, 1907. This notice was published only twice after the petition, order and notice were filed. An order is not complete until attested and filed by the clerk and at the time the first publication was made, this had not been done.

"The final account appears to have been dated Dec. 19, 1907, and filed in the office of the clerk of courts on Jan. 22, 1908. There is an order appointing a day of settlement of said account and directing notice to be given, which order was dated Dec. 19, 1907, and filed Jan. 22, 1908. The order provides that the hearing would take place on the 31st day of Dec. 1907. The notice of hearing provides that the petition would be heard on Dec. 31, 1907. The same appears to have been filed Jan. 22, 190 * * *. This final account, order for hearing, and notice for hearing all having been filed on the 22nd of Jan. 1908. It is my opinion the court did not have jurisdiction to decree this property, on the date it was purported to have been. This order and notice were based upon a petition that was not filed for nearly 30 days after the order was made and 22 days after the date set for hearing. The administrator does not appear to have been discharged. For the reasons aforestated, this probate proceedings are not sufficient."

The second objection to the title relates to the execution and foreclosure of a certain real estate mortgage which is set forth in the examiner's opinion as follows:

"At number 55 is a mortgage executed by John B. Peterson and wife to Charles A. Draeger, dated Dec. 24, 1928.

This mortgage was subsequently assigned to The Grand Lodge of the Ancient Order of United Workmen of South Dakota, which assignment was dated Jan. 25, 1929. The record of such assignment is found at number 4 of the continuation. This assignment conveys a mortgage executed by John B. Peterson and Kate Peterson. At number 5 The Grand Lodge of the Ancient Order of United Workmen of South Dakota assigned this mortgage to The Grand Lodge of the Ancient Order of United Workmen of North Dakota. This also assigned a mortgage executed by John B. Peterson and Kate Peterson.

"At number 7 appears a notice of mortgage foreclosure sale by The Grand Lodge of the Ancient Order of United Workmen of North Dakota, as assignee, foreclosing a mortgage executed by John B. Petersen and Kate Petersen. There should be some evidence of record showing that the parties named as John B. Peterson and Kate Peterson in the assignments were the same parties as the ones executing the mortgage as John B. Petersen and Kate Petersen."

The third objection to the title relates to the execution of the deed on May 22, 1911, by one Amelia Speth. The objection goes to the fact that there is no showing in the abstract that Amelia Speth at the time of the execution of the deed was a single person or that the land was not occupied as a homestead. The examiner's opinion required that plaintiff produce evidence either that Amelia Speth was unmarried at the time the deed was executed or, if married, that proof be furnished that the real estate was not occupied as a homestead. A judgment in favor of defendant was rendered by the trial court.

■ ■ In the case of Larson v. Thomas, 51 S. D. 564, 215 N. W. 927, 929, 57 A. L. R. 1246, this court had under consideration the question of what constitutes a merchantable title. The court said:

"It may be said that, as a general rule, a purchaser is not bound to accept a conveyance, if the title is reasonably doubtful. Mere possibility or suspicion of defect is not sufficient, but, if there is a doubt or uncertainty sufficient to form the basis of litigation or color of an outstanding title which may prove substantial, the title cannot be said to be

marketable. * * * If there are defects that will form the basis for objection, and which will be objected to by most, if not all, reputable and competent attorneys to which the abstract may be submitted, then the purchaser ought not to be compelled to accept such title, because he may not be able to procure a purchaser until such defects are cured. The defects impair the marketability, though they may not in fact impair the title."

██ The first objection of the examiner going to the failure to file the order for notice of hearing of the petition for letters of administration before the first publication of the notice has been ruled adversely to the examiner's opinion in the case of Davey v. McShane, 47 S. D. 265, 197 N. W. 680.

 The first objection also relates to the filing of the petition for letters of administration. It is disclosed that the petition was not filed with the clerk until after the first publication of the notice of hearing, and it is contended that failure to file the petition with the clerk renders ineffective the first publication of the notice and in effect destroys the entire probate proceeding. The published notice signed by the judge of the probate court recites that "notice is given that Jens Nels Jensen has filed with the judge of this court a petition praying for letters of administration." The statute effective at the date of these probate proceedings was Sec. 86, Probate Code of 1903. This section provides: "Petition for letters of administration must be in writing, signed by the applicant or his counsel, and filed with the judge of the court * * *. "The revisions of 1919 and 1939 require that the petition be filed with the clerk of courts. Sec. 3255, R. C. 1919; SDC 35.0505. It appearing that the petition had been filed with the judge of the court, and the effective statute not requiring that the petition be filed with the clerk, we are of the opinion that the first published notice of the hearing was a valid notice, and that the county court had jurisdiction to administer the estate. We find nothing contrary to this conclusion in Section 435, Probate Code 1903, which simply provides: "Wherever in this probate code, provision is made for the making or filing of any records or papers, or the retaining the custody of the same by the county judge or in

the county court, such provision shall be deemed and held to mean that the judge may direct the clerk of said county court, if there be one, to perform such duties, * * *." This statute is permissive only, and nothing therein requires that papers be filed with the clerk where the statute only requires that they be filed with the judge. Whether the petition must be filed with the clerk of courts, to give the court jurisdiction under the statutes as they now exist, we express no opinion.

The next objection goes to the failure to file with the clerk the order appointing a day for settlement of the final account and directing notice to be given until after the time fixed for the hearing. The then applicable statute, Section 284, Probate Code 1903, provided that "notice must be given by posting or publication as the court may direct and for such time as may be ordered by the court but for not less than ten days prior to the day of settlement." It appears, therefore, that an order of the court was necessary to prescribe the kind and the length of the notice. It is contended that an order is not effective until filed with the clerk. Sec. 317, Code of Civil Procedure 1903. We concede this general contention and direct our attention to the curative act of 1919. Ch. 5, Laws of 1919 provides:

"All orders of the county courts of this state which were signed in writing by the county judge thereof prior to the taking effect of this act, and which have been heretofore attested by the clerk and filed in his office, are hereby declared to be legal, valid, complete and effective as such as of the date on which such orders were signed by the judge of such court, notwithstanding the provisions of section 317 of the code of civil procedure of 1903."

To a similar effect is Ch. 5, Laws 1921. We are convinced that this curative act cured the objection now being raised to the filing of the order fixing the time for hearing and directing the notice to be given. This court has held the act effective in so far as it applied to an order for publication of notice to creditors. Davey v. McShane, 47 S. D. 265, 197 N. W. 680, 682. We think it clear that the legislature had it so elected could have in the first instance made the order effective when signed by the judge, and dispensed

with any filing with the clerk. As stated in the Davey-Mc-Shane case:

"If the thing wanting, or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the Legislature might have dispensed with by prior statute, then it is not beyond the power of the Legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the Legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law."

But respondent contends that the failure to file the order with the clerk is a jurisdictional defect which renders any subsequent acts based upon the purported order void, and cites in support of such contention the case of Carter v. Frahm, 31 S. D. 379, 141 N. W. 370. No question of failure to file an order was involved in the cited case; the question there went to giving a notice other than that ordered by the court. Nor was any curative act involved in that case. This court held in the case of Viland et al v. Board of Education of Independent School Dist. of Veblen et al., 37 S. D. 412, 158 N. W. 906, that the power of the legislature to pass curative acts is without any limit except such as is imposed by constitutional restrictions or limitations, and pointed out that every so-called "jurisdictional" step in a proceeding is not such that it cannot be cured by a curative act. See also Chase v. Trout, 146 Cal. 350, 80 P. 81. In the facts before us it is disclosed that the exact notice required by the court was given, the constitutional requirement of "due process" was satisfied, the defect consists only in the failure to file the order before publishing the notice, and since this omitted act was one which the legislature might have dispensed with by prior law, we think it clear that it was such a defect as the legislature could cure by the 1919 Act.

The conclusions above reached make unnecessary any discussion of Sec. 5, Ch. 175, Laws 1943, which appellant also urges in support of its position. However, in the consideration of this case the court has given thought and attention to this 1943 act and the purpose which it seeks to

serve. The need for shortening the period during which the record title to real estate must be examined is imperative, but as pointed out by the Hon. D. K. Loucks at the meeting of The State Bar in 1944 (S. Dak. Bar Journal, Vol. XIII, page 140), Ch. 175, Laws of 1943, is, perhaps, not a very scientific approach to the problem. The Wisconsin and Iowa legislatures have tried to meet the same problem. See Ch. 293, Laws of Wisconsin 1941, amended by Ch. 109, Laws of 1943, 1943 Wisconsin St. 330.15, and Sections 11024 and 11030, Code of Iowa, 1939, and amendment of Section 11024 by Ch. 269, Laws of Iowa 1943. See also Wisconsin Law Review, March 1942, page 258, Title to Real Property— Thirty Year Limitation Statute; Lane et al. v. Travelers Ins. Co., 230 Iowa 973, 299 N. W. 553; Iowa Land Title Standards adopted by the Iowa State Bar Association effective July 4, 1944, Statute of Limitations; Patton on Titles (1938) Sec. 59.

██ ██ The next point urged by respondent is to have the mortgagors John B. Peterson and Kate Peterson identified as the John B. Petersen and Kate Petersen named in the mortgage foreclosure proceedings. The discrepancy in these names is so slight that it should be presumed the parties are identical. Patton on Titles (1938) cites a large number of cases in support of the text, which states on page 206: "There is a presumption that differently spelled names refer to the same person, when they sound alike, or when the attentive ear finds difficulty in distinguishing them, or when common usage has by corruption or abbreviation made their pronunciation identical; e. g., Conolly and Conley, Macomber and McComber."

██ The final objection to the title relates to the deed executed by Amelia Speth and the failure of any showing that the grantor was a single person or that the land was not occupied as a homestead. See SDC 36.0204. Appellant contends that this alleged defect is cured by the more than thirty years of elapsed time since the deed was executed; that it must be conclusively presumed any homestead rights in the property have long since been abandoned. This contention, we are convinced, ignores the fact that Sec. 3217, Revised Political Code 1903, which was the effective statute

at the time of this conveyance, rendered a conveyance of a homestead invalid unless joined in by both husband and wife. See Somers v. Somers, 27 S. D. 500, 131 N. W. 1091; 36 L. R. A., N. S., 1024; Kaiser v. Klein, 29 S. D. 464, 137 N. W. 52. Without a showing that the grantor was a single person or that the land was not occupied as a homestead at the time of the conveyance, it cannot be determined that the deed had any validity. It is not a question of relinquishment or abandonment of a homestead, but the objection goes to the validity of the deed. We see no escape from the conclusions that without the showing required by the examiner, it is impossible to determine that the deed signed by Amelia Speth constituted a valid conveyance of the property. This defect impairs the marketability of the title and it follows that the judgment appealed from must be affirmed.

ROBERTS and SICKEL, JJ., concur.

POLLEY, J., not sitting.

SMITH, Presiding Judge (dissenting).

It is my submission that the title is not rendered unmarketable because of the described deed by Amelia Speth. There is no presumption warranting an inference that the grantor named was married at the time of the execution and delivery of the deed. Ross v. Carroll, 156 Minn. 132, 194 N. W. 315; Judd v. Skidmore, 33 Minn. 140, 22 N. W. 183; 57 A. L. R. 1253 at 1476; 66 C. J. 885. And see Patton on Titles, § 213. Consequently, I am unable to completely concur in the foregoing opinion. I respectfully dissent.